FARMER, J.
Defendant was charged with aggravated battery with a deadly weapon, alleging that on a specific date he struck his ex-wife’s new husband with a baseball bat. Before trial, the state moved to permit “similar acts” or Williams Rule evidence to the effect that:
1. on a prior occasion defendant attacked his ex-wife as she attempted to drive away in her car after she went to his house to pick up her daughter at the end of a scheduled visitation;
2. on another prior occasion he pursued the ex-wife by car and shouted profanities at her and threw himself at her car;
3. on a later occasion he screamed at the ex-wife that he would not produce their daughter and when he finally did so he struck her vehicle with a metal object;
4. on another later occasion he threatened her new husband that he intended to get his gun and that he intended to shoot his ex-wife and him.
The trial judge granted the motion, stating that it was relevant to show his motive to frustrate the visitation schedule with the minor child. At trial the evidence was admitted over defendant’s renewed objection. We reverse the resulting conviction and remand for a new trial.
The crime on trial was aggravated battery with a deadly weapon as a result of the baseball bat incident. The state thus had to prove that defendant actually and intentionally struck the victim against his will and that he used a deadly weapon in doing so. See § 784.045(l)(a)2 and § 784.03(l)(a) (1997). For these collateral acts to be admissible, they would have to be relevant to prove those elemental facts. In this case, however, the trial court’s stated rationale for admitting the collateral acts was that they were relevant to show his motive and intent to frustrate the visitation schedule. While defendant may indeed have sought to interfere with the *273 visitation, he was on trial only for aggravated battery with a deadly weapon — not for criminally frustrating visitation. The only issue of intent was whether he intentionally struck the victim with the baseball bat on the date charged. The collateral acts admitted into evidence had only the most marginal relevancy, if any at all, to the intent required for the charged offense, especially considering that two of the alleged incidents occurred after- ■ the baseball bat incident.
Moreover, none of the collateral acts were factually similar to the charged incident. In none of those incidents was it’ alleged that defendant used a deadly weapon to attack the victim — or anyone else for that matter. The acts demonstrating the antagonistic behavior were relevant solely to prove his propensity to commit the crime charged.
While defendant had the opportunity to explain these collateral acts and present his version of them to the jury, the record reveals that' the collateral acts prejudiced defendant in the minds of the jury. During deliberations, the jury requested that a tape recording secretly made by the victim during the fourth collateral incident (two weeks after the alleged crime) be replayed for them, and-the tape recording was republished to the jury. In addition, while the jury originally requested that they be allowed to rehear the testimony of defendant, his ex-wife, and the victim in their entirety, after hearing the tape recording again the jury changed its mind.
The jury’s desire to hear the tape of the fourth collateral incident again indicates that at least one of the collateral acts, if not all, factored heavily into its decision. Moreover, during closing arguments, the state not only emphasized the collateral acts but ultimately asked the jury to hold defendant responsible for the “shenanigans” that had been going on since 1992. Consequently, we are unable to conclude, beyond a reasonable doubt that the erroneous admission of the collateral acts evidence was harmless.
STONE and SHAHOOD, JJ., concur. ■